1
2
3
4
5
6
7
8                   **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   DANNY FABRICANT,              )   CV 14-8124-RSWL
                                   )   CR 03-01257-RSWL-1
13          Petitioner/Defendant, )
                                   )   **ORDER re: Motion to**
14       v.                        )   **Vacate, Set Aside or**
                                   )   **Correct Sentence by a**
15   UNITED STATES OF AMERICA,     )   **Person in Federal**
                                   )   **Custody Pursuant to 28**
16          Respondent/Plaintiff. )   **U.S.C. § 2255** [CV 1]
                                   )
17                                 )
                                   )
18   _____)

19       Currently before the Court is Petitioner Danny

20   Fabricant's ("Petitioner") Motion to Vacate, Set Aside

21   or Correct Sentence Pursuant to 28 U.S.C. § 2255 [CV 1]

22   ("§ 2255 Motion").  The Government opposes the § 2255

23   Motion [CV 26].

24       The Court, having considered all papers submitted

25   pertaining to the § 2255 Motion, **NOW FINDS AND RULES AS**

26   **FOLLOWS**: Petitioner's § 2255 Motion [CV 1] is **DENIED**

27   and the Court **DENIES** a Certificate of Appealability.

28   / / /

                                1

# I. BACKGROUND

On March 26, 2004, Petitioner and co-defendant Rachel Meyer ("Meyer") were charged with conspiracy and drug trafficking offenses in violation of 21 U.S.C. §§ 841 and 846 [CR 105].[1]

On July 28, 2004 a jury convicted Petitioner on all Counts [CR 204].  This Court sentenced Petitioner to life imprisonment [CR 299].  On appeal, the Ninth Circuit reversed Petitioner's convictions and remanded for a new trial [CR 525].

Retrial commenced on September 23, 2008 [CR 674]. The Government called among its witnesses Michael Kramer ("Kramer"), an informant acting on behalf of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and ATF Special Agent John Ciccone.

On September 26, 2008, a jury again convicted Petitioner on all counts [CR 682].  Petitioner was again sentenced to life imprisonment [CR 848, 849]. Petitioner appealed his conviction and sentence [CR 850].  The Ninth Circuit affirmed Petitioner's

_____

[1] Count one charged conspiracy to distribute more than 50 grams of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 846; 841(b)(1)(B)(viii); and 841(b)(1)(C).  Indictment, ECF No. CR 105.  Counts two and three charged distribution of more than 5 grams of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).  Id.  Count four charged distribution of more than 50 grams of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).  Id.  Count five charged possession with intent to distribute more than 5 grams of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).  Id.

conviction and sentence, and the Supreme Court denied
certiorari.  United States v. Fabricant, 506 F. App'x
636, 642 (9th Cir. 2013), cert. denied 134 S. Ct. 450
(Mem.) (2013).

Several months after sentencing, Petitioner filed
an Ex Parte Application for Order Requiring DNA Testing
Per 18 U.S.C. § 3600 [CR 979] ("Ex Parte Application
for DNA Testing"), in which Petitioner argued that
"[i]f the DNA testing confirms that the defendant's DNA
is not present on the baggies and packaging materials,
it would prove that the defendant was factually
innocent of selling Meth to Kramer, and was, in fact,
framed by Kramer." Ex Parte Appl. for DNA Testing 11-
12.  This Court rejected the filing because the case
was closed [CR 955].  Petitioner appealed, and the
Ninth Circuit reversed and remanded with instructions
to consider Petitioner's application on the merits.
United States v. Fabricant, 581 F. App'x 663 (9th Cir.
2014).  After further briefing by the parties [CR 986
(Opposition); CR 995 (Reply)], this Court denied
Petitioner's application on the merits [CR 997],
holding that Petitioner failed to meet the statutory
requirements for obtaining relief.  Petitioner filed a
notice of appeal [CR 1002] on September 18, 2014.  The
matter is currently pending appeal.  United States v.
Fabricant, No. 13-50526.

1   On October 21, 2014, Petitioner timely[2] filed his §

2   2255 Motion [CV 1].  In support of his § 2255 Motion,

3   Petitioner filed a Memorandum of Points and Authorities

4   Part I (Grounds) [CV 3] ("Memorandum Part I"), a

5   Memorandum of Points and Authorities Part II (Statement

6   of Facts) [CV 4] ("Memorandum Part II"), Exhibits Part

7   I [CV 2] and Exhibits Part II [CV 44].  On March 24,

8   2015 the Government filed its Opposition to Motion to

9   Vacate, Set Aside or Correct Sentence Pursuant to 28

10  U.S.C. § 2255 [CV 26] ("Opposition").  On August 31,

11  2015 Petitioner filed his Reply to Government's

12  Opposition to Motion to Vacate, Set Aside or Correct

13  Sentence Pursuant to 28 U.S.C. § 2255 [CV 45]

14  ("Reply").

15  / / /

16  / / /

17  / / /

18

19      [2] A Section 2255 motion must be filed within one year from
20  the latest of, *inter alia*, "the date on which the judgment of
    conviction becomes final."  28 U.S.C. § 2255(f)(1).  Here,
21  Petitioner's conviction became final on October 15, 2013 when the
    Supreme Court denied certiorari of his appeal.  See United States
22  v. Fabricant, 506 F. App'x 636 (9th Cir. 2013), cert. denied, 134
    S. Ct. 450 (Mem.) (Oct. 15, 2013).  Petitioner's § 2255 Motion
23  was filed on October 21, 2014, over a year from the date on which
    his conviction became final.  However, pursuant to the "prison
24  mailbox rule," which applies to *pro se* habeas petitioners such as
    Petitioner, the filing date of Petitioner's § 2255 Motion is
25  deemed to be the date on which Petitioner delivered his § 2255
    Motion to prison authorities to mail to the clerk of court.
26  Stillman v. LeMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).  Here,
    Petitioner's §2255 Motion was postmarked October 13, 2014 [CV 1].
27  Because October 13, 2014 is within the one-year statute of
    limitations imposed by 28 U.S.C. § 2255, Petitioner's § 2255
28  Motion was timely filed.

**II. DISCUSSION**

**A.   Legal Standard**

    1. <u>28 U.S.C. § 2255</u>

    28 U.S.C. § 2255 provides that a federal prisoner may make a motion to vacate, set aside or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

    The range of claims which may be raised in a § 2255 motion is narrow.  <u>United States v. Wilcox</u>, 640 F.2d 970, 972 (9th Cir. 1981).  In order for a claim to be cognizable under § 2255, a motion must allege: (1) a constitutional error; (2) that the district court lacked jurisdiction to impose the sentence; (3) that the sentence was imposed in excess of the statutory maximum; or (4) that the sentence is otherwise subject to collateral attack.  <u>Id.</u>

    The remedy under § 2255 does not encompass all claimed errors in conviction and sentencing.  <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979); <u>Wilcox</u>, 640 F.2d at 973 ("Errors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255.").  A mere error of law does not provide a basis for

collateral relief under § 2255 unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" and renders the entire proceeding "irregular and invalid." Addonizio, 442 U.S. at 185-86.

Further, "the Court has cautioned that § 2255 may not be used as a chance at a second appeal." United States v. Berry, 624 F.3d 1031, 1038 (9th Cir. 2010); United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993) ("Section 2255 . . . is not designed to provide criminal defendants multiple opportunities to challenge their sentence."). A matter that has been decided adversely on appeal from a conviction cannot be relitigated on a § 2255 motion absent changed circumstances of law or fact. Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972); Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995).

Similarly, "[h]abeas relief is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)) (internal quotation marks omitted). Where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised in a § 2255 motion only if the defendant can first demonstrate both "cause" excusing his procedural default and "actual prejudice" resulting from the claim of error, or that he is "actually innocent." Bousley,

523 U.S. at 622.  The existence of "cause" for a procedural default turns on whether the petitioner can show that some objective factor external to the defense impeded defense counsel's efforts to comply with the procedural rules or made compliance impracticable. Murray v. Carrier, 477 U.S. 478, 488 (1986).  To show "actual prejudice," the petitioner must show that the alleged errors at trial created more than a mere possibility of prejudice, but that the errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).  To establish "actual innocence," Petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted).

**B.  Discussion**

Petitioner raises five grounds in his § 2255 Motion.  Each ground is discussed below.

1.  Petitioner's Due Process Claims

In ground one, Petitioner argues that he was "denied due process by the collective actions of the government, this court, and appointed counsel." Pet'r's Mem. Part I 1-1.  Specifically, Petitioner lists twenty-four "examples" of alleged due process violations, which he claims are illustrative of his

broader argument found in the 134-page Memorandum Part II. Id. at 1-1 to 1-20.

After having reviewed Petitioner's arguments in Memorandum Parts I and II, Petitioner's "due process" claims can be divided into eight broad categories: (1) the Court denied Petitioner's various motions and ex parte applications, and overruled Petitioner's various objections to the Government's motions and at trial;[3] (2) the Prosecutor "lied" to the Court on at least two occasions;[4] (3) the Government deliberately delayed the proceedings to the prejudice of Petitioner;[5] (4) the Court's hearing to determine whether to allow the Government to use Petitioner's prior convictions for sentencing purposes was constitutionally inadequate;[6] (5) co-counsel failed to object to the introduction of certain evidence at trial;[7] (6) co-counsel "usurped" the defense;[8] (7) the Court erred in its jury instructions;[9] and (8) the Court and Prosecutor improperly questioned Meyer at retrial.[10] Each of these categories is discussed in turn.

---

[3] Petitioner's "examples" 1-8, 10-14, 18-19 and related arguments. In one instance, Petitioner argues that the Court entirely denied him a hearing when it refused to hear testimony from six witnesses on a motion to exclude communications with Kramer under the priest-penitent privilege.

[4] Petitioner's "example" 9 and related arguments.

[5] Petitioner's "examples" 16, 20 and related arguments.

[6] Petitioner's "example" 13 and related arguments.

[7] Petitioner's "examples" 15, 24 and related arguments.

[8] Petitioner's "examples" 17-18, 24 and related arguments.

[9] Petitioner's "examples" 21, 22 and related arguments.

[10] Petitioner's "example" 23 and related arguments.

1              a.   *The Court's denial of Petitioner's various*

2                   *motions and ex parte applications did not*

3                   *constitute a violation of due process.*

4        Petitioner raises several arguments that the Court

5   wrongfully denied his various motions, requests and *ex*

6   *parte* applications, including, *inter alia*: a motion

7   related to visitation at the MDC-LA by any attorney or

8   investigator, a motion to exclude material under the

9   priest-penitent privilege, requests for out-of-district

10  subpoenas, requests for payment of witness fees and

11  mileage, requests for a copy of a Confidential

12  Recommendation letter, requests for discovery materials

13  from the Government, a motion to place Petitioner on

14  the "Extra Law Library" list and a motion for return of

15  property.

16       Some of these claims were adversely decided against

17  Petitioner on appeal,[11] and Petitioner cannot now raise

18  them in a § 2255 Motion.   Odom, 455 F.2d at 160.   The

19

20       [11] See, e.g., Petitioner's request to be permanently placed
21  on the "Extra Law Library" list [CR 554]; request to allow any
    attorney or investigator to visit Petitioner at the MDC-LA [CR
22  511]; request for additional access to a typewriter [CR 519];
    motion for return of property [CR 854, 856].  Appellant's Opening
23  Br. 23-24, ECF No. 26-1.  The Ninth Circuit held that
    Petitioner's access to materials and resources was not
24  unreasonable, and that the trial court properly dismissed his
    motion for return of property.  Fabricant, 506 F. App'x at 638-
25  639, 641.  Petitioner raised these arguments a second time in his
    seventh ground of appeal, in which he argued that cumulative
26  errors at trial violated his due process rights.  Appellant's
    Opening Br. 69-70.  The Ninth Circuit held that Petitioner failed
27  to establish multiple errors, much less cumulative errors.
    Fabricant, 506 F. App'x at 640-41.

28

remainder of these claims are waived because Petitioner failed to raise them on direct appeal and failed to demonstrate "cause" and "actual prejudice," or "actual innocence," to excuse his procedural default.  <u>Bousley</u>, 523 U.S. at 622.

Petitioner contends that several of his arguments were raised on appeal through his filing of Exhibit M, a six-page addendum to his Opening Brief in the Ninth Circuit.  <u>See</u> Pet'r's Exhibits Part II [CV 44].  In Exhibit M, Petitioner asserted additional grounds of appeal which were not included in his Opening Brief due to the Ninth Circuit's word limitations.  Many of these additional arguments were not directly addressed in the Ninth Circuit opinion affirming his conviction, and Petitioner now argues that they are not procedurally barred.

However, Federal Rule of Appellate Procedure 28(a)(6) provides: "The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."  The Ninth Circuit has held that issues raised in a brief that are not supported by argument are deemed abandoned.  <u>Martinez-Serrano v. I.N.S.</u>, 94 F.3d 1256, 1259 (9th Cir. 1996) (citing <u>Acosta-Huerta v. Estelle</u>, 7 F.3d 139, 144 (9th Cir. 1992)).  Furthermore, issues referred to in the appellant's statement of the case but not discussed in the body of the brief are waived.

1    <u>Id.</u>   The Ninth Circuit has even refused to consider
2    constitutional matters that were neither briefed nor
3    argued, but merely asserted in conclusory terms.
4    <u>United States v. Mateo-Mendez</u>, 215 F.3d 1039, 1043 (9th
5    Cir. 2000).   Petitioner's "laundry list" of claims in
6    Exhibit M were not properly briefed, argued or reasoned
7    in his brief before the Ninth Circuit.   Therefore,
8    although the Ninth Circuit did not explicitly reject
9    Petitioner's additional filing, Petitioner did not
10   properly raise these claims on appeal.

11       Moreover, Petitioner fails to show "cause" and
12   "actual prejudice" to excuse his procedural default.
13   Petitioner's only assertion of "good cause" is that
14   "there simply was not enough room" in his Opening Brief
15   to include all of his arguments.   Reply 6.   However,
16   this argument does not demonstrate "good cause" for
17   excusing Petitioner's procedural default.   Petitioner's
18   inability to craft his arguments in compliance with the
19   Ninth Circuit's 14,000 word limit for opening briefs
20   does not demonstrate an "objective factor external to
21   the defense," which "impeded defense counsel's efforts
22   to comply with the procedural rules or [make]
23   compliance impracticable."   <u>Murray</u>, 477 U.S. at 488.

24       Because Petitioner cannot show cause, we need not
25   consider whether he suffered actual prejudice.   <u>Cook v.</u>
26   <u>Schriro</u>, 538 F.3d 1000, 1028 n.13 (9th Cir. 2008)
27   (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 134 (1982)).   In
28   any case, Petitioner's assertion that his appellate

                              11

counsel's choice of grounds to be raised on direct
appeal caused him "actual prejudice" is without merit.
To show "actual prejudice," Petitioner must show that
the claimed errors at trial worked to his "actual and
substantial disadvantage, infecting his entire trial
with error of constitutional dimensions." <u>Frady</u>, 456
U.S. at 170.  The actions of Petitioner's appellate
counsel in choosing which arguments to pursue on appeal
did not have any effect on the outcome of Petitioner's
trial.  Regardless, any argument that the Ninth
Circuit's page limitations operated to his "actual
prejudice" fails.  <u>See</u> <u>Watts v. Thompson</u>, 116 F.3d 220,
224 (7th Cir. 1997) (holding that enforcing page limits
and other restrictions on litigants is "rather ordinary
practice" that does not violate due process); <u>accord</u>
<u>Davis v. Malfi</u>, No. CV 06-4744-JVS (JEM), 2014 U.S.
Dist. LEXIS 182882, at *76 (C.D. Cal. Oct. 1, 2014).

    Alternatively, Petitioner may demonstrate "actual
innocence" to excuse his procedural default.  <u>Bousley</u>,
523 U.S. at 623.  Although Petitioner argues in his
Reply that he generally asserted "actual innocence"
throughout the proceedings, his only specific argument
in this regard is that the absence of his DNA on any of
the baggies containing methamphetamine that Kramer sold
to Agent Ciccone proves that he was framed.  Pet'r's
Mem. Part I 4-1; Reply 8.  Even if this assertion is

taken as true,[12] it does not demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted" Petitioner. Bousley, 523 U.S. at 623.  This is so especially in light of the overwhelming evidence establishing Petitioner's guilt, including video and audio recordings of Petitioner's drug transactions, Meyer's testimony, physical evidence of methamphetamine sold by Petitioner, methamphetamine found in Petitioner's residence and Petitioner's own admissions.  Thus, Petitioner's assertion falls short of proving that he is "actually innocent" to overcome his procedural default.

    In any case, Petitioner's claims of error fail to establish a constitutional due process violation to support his § 2255 Motion.  The "root requirement" of procedural due process is that a deprivation of life, liberty or property must be preceded by notice and the opportunity for a hearing.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).  However, a court's rulings on various motions and *ex parte* applications do not interfere with a petitioner's constitutional rights to notice and the

---

[12] The mere fact that Petitioner's DNA was not found on the drug packaging does not show that he did not sell the package to Kramer.  The absence of DNA evidence does not prove that a defendant was not involved in the offense.  See, United States v. Jordan, 594 F.3d 1265, 1268 (10th Cir. 2010).

opportunity to be heard if a full hearing is afforded.
United States v. Gallagher, 183 F.2d 342, 345 (3d Cir.
1950) ("[A] wrong decision upon the merits does not
constitute denial of due process of law if the
opportunity of a full hearing is afforded.  Such a
decision, therefore, does not involve a denial of
constitutional rights which may be made the basis of a
motion under Section 2255.").

Moreover, "[t]he standard of review of § 2255
petitions is stringent and the court presumes earlier
proceedings were correct."  United States v. Benford,
No. SACR 05-0010 DOC, 2012 WL 2411920, at *2 (C.D. Cal.
June 22, 2012).  Relief is not available merely because
of error that may have justified reversal on direct
appeal.  Frady, 456 U.S. at 165.  To succeed on a §
2255 motion, the defendant must show a defect in the
proceedings which resulted in a "complete miscarriage
of justice" and rendered the entire proceedings
"irregular and invalid."  Addonizio, 442 U.S. at 185-
86; see also Berry, 624 F.3d at 1039-40 (an evidentiary
ruling may provide grounds for relief under § 2255
where the ruling was so arbitrary as to render the
trial fundamentally unfair); Parle v. Runnels, 387 F.3d
1030, 1045 (9th Cir. 2004) (where no specific
constitutional violation can be shown, "habeas review
of trial error is limited to whether the error so
infected the trial with unfairness as to make the
resulting conviction a denial of due process").  A due

14

process violation only occurs if the error "[had] the effect of converting what was otherwise a fair trial into one which is repugnant to an enlightened system of justice." Vandergrift v. United States, 313 F.2d 93, 94 (9th Cir. 1963). Mere prejudice to the defendant is not necessarily sufficient. Id.

Here, Petitioner fails to establish that he was deprived of a fair trial as to his convictions. Petitioner's § 2255 Motion is devoid of legal authority to support that any of the errors alleged amount to violations of his due process rights. Moreover, this Court afforded Petitioner a full hearing on his various motions and ex parte applications, and the Court's rulings were not so arbitrary as to render Petitioner's trial fundamentally unfair. See Berry, 624 F.3d at 1039-40. The errors complained of also did not "so infect the trial with unfairness" as to make Petitioner's conviction a denial of due process. See Parle, 387 F.3d at 1045. Not only does Petitioner fail to show in his § 2255 Motion that the Court erred in ruling on his various motions and ex parte applications, but he fails to show a defect in the proceedings which resulted in a "complete miscarriage of justice." Addonizio, 442 U.S. at 185-86. As the Ninth Circuit determined on direct appeal, "Fabricant has not shown multiple errors, let alone cumulative errors that produce sufficient prejudice to warrant a new trial." Fabricant, 506 F. App'x at 641. Rather,

Petitioner was given the opportunity for a full hearing on his various motions and *ex parte* applications throughout the proceedings.   Therefore, the Court's denial of Petitioner's various motions and *ex parte* applications did not constitute a violation of due process.

> b.   *Petitioner fails to establish that the Prosecutor "lied" to the Court on at least two occasions.*

On direct appeal, Petitioner failed to raise the argument that the Prosecutor "lied" on at least two occasions, namely, (1) with respect to its access to Petitioner's telephone calls and (2) with respect to the anticipated scope of its questioning of Meyer at retrial.   As explained above, because Petitioner failed to demonstrate "cause" and "actual prejudice," or "actual innocence," to excuse his procedural default, these claims are barred from Petitioner's § 2255 Motion.   <u>Bousley</u>, 523 U.S. at 622.

In any case, Petitioner's allegations are unsupported in fact.   Because Petitioner fails to demonstrate that the Prosecutor "lied" or otherwise engaged in misconduct, he cannot show that the Prosecutor's actions deprived him of a fair trial. <u>United States v. Sanchez-Robles</u>, 927 F.2d 1070, 1077 (9th Cir. 1991), <u>overruled on other grounds by</u> <u>United States v. Heredia</u>, 483 F.3d 913, 923 n.16 (9th Cir. 2007).

1    As to Petitioner's first allegation, Petitioner
2    argues that the production of only one document as a
3    result of a FOIA request proves that Assistant United
4    States Attorney April Christine was "lying" when she
5    told the Court that "there is a procedure that the
6    Government has to go through [to access Petitioner's
7    phone calls], . . . [and] the Government does not
8    automatically have access to them without going through
9    that procedure."  Rep. Tr. 9:22-25, Feb. 11, 2008 [CR
10   804]; Pet'r's Mem. Part II 19-21.  This argument makes
11   little sense and Petitioner fails to show that the
12   Prosecutor "lied" in this instance.

13   As to Petitioner's second allegation, Petitioner
14   fails to establish that the Government's questioning of
15   Meyer went outside the agreed-upon scope of Meyer's
16   prior admissions before the Court as a matter of public
17   record and in the plea agreement.  See Government's
18   Motion In Limine Re: Admissibility of Anticipated
19   Testimony of Witness Rachel Lee Meyer, ECF No. CR 649.
20   Petitioner merely reproduces the text of the Reporter's
21   Transcript without explaining or demonstrating that the
22   Government deviated from the scope of its anticipated
23   questioning.  Pet'r's Mem. Part II 83-89.  For these
24   reasons, Petitioner's claim that the Prosecutor "lied"
25   to the Court on several occasions fails to state a
26   cognizable claim under § 2255.
27   / / /
28   / / /

           c.   *The Government did not deliberately delay*

               *the proceedings in violation of*

               *Petitioner's due process rights.*

Petitioner argues that the Government engaged in "dirty tricks" by deliberately delaying the hearing on Petitioner's Motion for Transfer of Evidence for Quantitative and Qualitative Analysis at an Independent Laboratory [CR 566] ("Motion for Independent Analysis of Evidence") and waiting until two weeks before trial to file its motion *in limine* regarding the admissibility of anticipated testimony of Meyer [CR 649]. Pet'r's Mem. Part I 1-6, 1-8. These arguments are entirely without merit.

As an initial matter, Petitioner did not raise these arguments on direct appeal, and fails to demonstrate "cause" and "actual prejudice," or "actual innocence," to excuse his procedural default. Therefore, these claims are barred from his § 2255 Motion. <u>Bousley</u>, 523 U.S. at 622.

On the merits, Petitioner cannot show that the Prosecutor engaged in misconduct which "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 180-81 (1986) (holding that prosecutor's comments in closing argument, though "undoubtedly improper," did not deprive defendant of due process rights). In order to prove a violation of due process due to prosecutorial misconduct, Petitioner

must show that "the Government's conduct [was] so grossly shocking and so outrageous as to violate the universal sense of justice," which is an "extremely high standard." <u>United States v. Smith</u>, 924 F.2d 889, 897 (9th Cir. 1991).  Because Petitioner fails to show that the Prosecutor engaged in misconduct, he cannot demonstrate that he was denied a fair trial.  <u>See Sanchez-Robles</u>, 927 F.2d at 1077.

With regards to the Motion for Independent Analysis of Evidence, Petitioner did not oppose the Government's request for an extension of time to file its Response to the Motion [CR 568].  Both parties then stipulated to take the Motion off-calendar [CR 575, 576].  On the Court's own motion, the hearing was then continued from May 13, 2008 to August 14, 2008 [CR 611].  On August 20, 2008 the Court granted Petitioner's Motion [CR 628].  It is not clear how the Government's actions with regards to this Motion prevented Petitioner from "demonstrat[ing] to the Jury that there was less than 50 grams of pure Meth in the Meth mixture."  <u>See</u> Pet'r's Mem. Part I 1-6.  It is equally unclear that the Government "deliberately" or wrongfully delayed the hearing of the Motion.  Any delay by the Government does not amount to behavior that is "so grossly shocking and so outrageous as to violate the universal sense of justice."  <u>Smith</u>, 924 F.2d at 897.  Rather, Petitioner's failure to perform the independent analysis before trial rests squarely with the defense.

Petitioner's second argument regarding the timing
of the Government's motion *in limine* concerning Meyer's
testimony is similarly unsupported.   Petitioner does
not demonstrate that the Prosecutor committed
misconduct in filing its motion *in limine*, much less
that the timing of this motion "sandbagged" the
defense.   The Prosecutor's timing for filing its motion
*in limine* two weeks before trial is not an unusual
practice and does not meet the "extremely high
standard" required to demonstrate prosecutorial
misconduct.   <u>Smith</u>, 924 F.2d at 897.   For these
reasons, both of Petitioner's claims fail to state a
claim under § 2255.

> d.   *The hearing on the use of Petitioner's*
>      *prior convictions for sentencing did not*
>      *violate Petitioner's due process rights.*

Petitioner argues that the Court improperly
permitted the Government to submit additional briefing
on the use of Petitioner's prior convictions for
purposes of sentencing.   Pet'r's Mem. Part I 1-5; <u>see</u>
ECF Nos. CR 264, 277.   Prior to the hearing pursuant to
21 U.S.C. § 851 to establish prior convictions,
Petitioner filed a Motion to compel the United States
Attorney's office to provide information showing that
Petitioner was provided his Sixth Amendment right to
counsel in reaching the prior convictions [CR 203].
The Government opposed Petitioner's Motion [CR 234].
The Court denied the Motion [CR 238].   At a hearing on

December 13, 2004, [CR 263] the Court ordered the
Government to submit briefs regarding "sufficiency of
records" to support its arguments on Petitioner's prior
convictions.   The Court also ordered "Defendant . . .
to respond thereafter."   After the Government filed its
brief [CR 264], Petitioner filed a Response [CR 277].
On January 24, 2005, the Court held the hearing
pursuant to 21 U.S.C. § 851 [CR 279], in which the
Court denied Petitioner's objections and permitted the
Government to use Petitioner's prior convictions for
purposes of sentencing.[13]   Petitioner now argues that
this procedure violated his due process rights.
Pet'r's Mem. Part I 1-5.

    To the extent that Petitioner complains that the
Court's acceptance of additional filings from the
Government regarding the 21 U.S.C. § 851 hearing
violated his due process rights, Petitioner failed to
raise this argument on direct appeal.   Therefore, as
noted above, absent a showing of "cause" and
"prejudice," or "actual innocence," Petitioner's claim
is procedurally barred.   Bousley, 523 U.S. at 622.
/ / /

---

[13] Petitioner argues that the 21 U.S.C. § 851 hearing was
concluded on December 13, 2004.   See Pet'r's Mem. Part II at 57.
However, at the hearing on December 13, 2004, the Court
explicitly requested more information from the parties regarding
Petitioner's prior convictions and noted that "[t]he Court will
issue a final ruling on this matter at the time of Defendant's
sentencing."   Minutes of First Day Jury Trial, Dec. 13, 2004, ECF
No. 263.

1     In any case, the Court's acceptance of further
2  briefing under 21 U.S.C. § 851 did not violate
3  Petitioner's due process rights.  Although the Court
4  ordered further briefing from the Government, the Court
5  also ordered further briefing from Petitioner.[14]
6  Therefore, Petitioner was afforded an adequate
7  opportunity to present his arguments.  The Court's
8  request for additional information necessary to make a
9  determination under 21 U.S.C. § 851 did not constitute
10  a defect in the proceedings which resulted in a
11  "complete miscarriage of justice" and rendered the
12  entire proceedings "irregular and invalid."  Addonizio,
13  442 U.S. at 185-86; see also United States v. Tucker,
14  404 U.S. 443, 446 (1972) ("[A] trial judge in the
15  federal judicial system generally has wide discretion
16  in determining what sentence to impose . . . [and]
17  before making that determination, a judge may
18  appropriately conduct an inquiry broad in scope,
19  largely unlimited either as to the kind of information
20  he may consider, or the source from which it may
21  come.").
22     For these reasons, Petitioner's argument cannot
23  form the basis for relief under § 2255.
24  / / /
25  / / /
26  / / /
27  ──────────────
28  [14] The Court mandated, "Defendant is to respond [after submission of the Government's briefs]."  ECF No. CR 263.

22

1          e.   *Co-counsel's failure to object to the*
2               *use of Petitioner's alias, Joe Carse,*
3               *did not constitute a due process*
4               *violation.*

5     Petitioner's argument that his due process rights
6 were violated when co-counsel failed to object to the
7 use of Petitioner's alias, Joe Carse, at trial was
8 litigated and adversely decided on appeal.  <u>Fabricant</u>,
9 506 F. App'x at 640-41; Appellant's Opening Br. 69-71
10 (specifically raising the argument as an example of
11 cumulative error in violation of Petitioner's Fifth
12 Amendment due process rights).  The Ninth Circuit
13 rejected this argument and held that "Fabricant has not
14 shown multiple errors, let alone cumulative errors that
15 produce sufficient prejudice to warrant a new trial."
16 <u>Fabricant</u>, 506 F. App'x at 641.  Petitioner is
17 therefore barred from relitigating this claim under §
18 2255.  <u>Odom</u>, 455 F.2d at 160.

19     Even if Petitioner frames this argument as a claim
20 of ineffective assistance of counsel under <u>Strickland</u>
21 <u>v. Washington</u>, 466 U.S. 668 (1984), Petitioner's claim
22 fails because Petitioner represented himself at trial.
23 <u>Faretta v. California</u>, 422 U.S. 806, 834 n. 46 (1975)
24 ("[A] defendant who elects to represent himself cannot
25 thereafter complain that the quality of his own defense
26 amounted to a denial of 'effective assistance of
27 counsel.'"); <u>Williams v. Stewart</u>, 441 F.3d 1030, 1047
28 n.6 (9th Cir. 2006) ("Having failed to show that his

1  decision to represent himself was involuntary, [a
2  defendant] cannot claim that he was denied the
3  effective assistance of counsel at trial.").   Moreover,
4  Petitioner's claim that co-counsel interfered with his
5  self-representation has already been resolved against
6  him on appeal,   Fabricant, 506 F. App'x at 638-40, and
7  Petitioner is barred from asserting in his § 2255
8  Motion that co-counsel's failure to object to certain
9  evidence violated his right to self-representation.
10 See Odom, 455 F.2d at 160.
11              f.   Co-counsel's alleged "usurpation" of the
12                   defense did not violate Petitioner's due
13                   process rights.
14      On direct appeal of his conviction and sentence,
15 Petitioner claimed that his waiver of right to counsel
16 was invalid, that co-counsel usurped his
17 representation, and that his right to access materials
18 to prepare a defense was unreasonably infringed in
19 violation of Faretta.   Appellant's Opening Br. 10-37.
20 The Ninth Circuit rejected all three of these claims.
21 Fabricant, 506 F. App'x at 638-40.   Thus, to the extent
22 Petitioner attempts to raise a claim that co-counsel
23 interfered with his self-representation, or that his
24 right to access to materials was unreasonably
25 infringed, these issues have already been resolved
26 against him on direct appeal and cannot be relitigated
27 under § 2255.   Odom, 455 F.2d at 160.
28 / / /

24

1    However, Petitioner now asserts that co-counsel's

2  "usurpation" of his defense violated his due process

3  rights to a fair trial.  Reply 15.  He avers that he

4  does not attempt to re-allege Sixth Amendment Faretta

5  violations in his § 2255 Motion.  Id.  Petitioner

6  cannot merely reformulate the identical Faretta claims

7  he already litigated on appeal as newly raised Fifth

8  Amendment Due Process violations.  Moreover,

9  Petitioner's claims are properly analyzed under the

10  Sixth Amendment.  Although the Fifth Amendment

11  guarantees criminal defendants "fundamental fairness"

12  throughout the criminal process, "[w]here a particular

13  Amendment 'provides an explicit textual source of

14  constitutional protection' against a particular sort of

15  government behavior, 'that Amendment, not the more

16  generalized notion of "substantive due process," must

17  be the guide for analyzing these claims."  Albright v.

18  Oliver, 510 U.S. 266, 273 (1994).  Since the Ninth

19  Circuit already addressed these claims under the Sixth

20  Amendment, these claims are barred.  Odom, 455 F.2d at

21  160.

22    Further, even if Petitioner could procedurally

23  raise these claims, his argument fails.  Both the Ninth

24  Circuit and this Court have found that co-counsel did

25  not usurp the defense and that Petitioner's access to

26  materials was not unreasonable.  Fabricant, 506 F.

27  App'x at 638-39.  Moreover, Petitioner cannot show that

28  the provision of copies of certain documents and

materials only to his co-counsel rises to the level of
a due process violation when Petitioner specifically
authorized co-counsel to communicate with the
Government on his behalf.  Therefore, none of
Petitioner's complained errors amount to a defect in
the proceedings which resulted in a "complete
miscarriage of justice," and Petitioner fails to show
that co-counsel's actions violated his due process
rights.  <u>Addonizio</u>, 442 U.S. at 185-86.

> g.  *The jury instructions did not violate*
> *Petitioner's due process rights.*

Petitioner raises two claims that the jury
instructions violated his due process rights: (1) the
Court erred in not instructing the jury to determine
the "exact weight" of methamphetamine in each Count and
(2) the Court failed to give a "simple possession"
instruction regarding the possession with intent to
distribute charge.

Petitioner's first claim fails because Petitioner
failed to raise the argument on appeal, and Petitioner
cannot demonstrate "cause" and "actual prejudice," or
"actual innocence" to excuse his procedural default.
<u>Bousley</u>, 523 U.S. at 622.  In any case, this claim
fails on the merits because Petitioner fails to
demonstrate how the instruction was erroneous, much
less that it rendered the trial "fundamentally unfair."
<u>Berry</u>, 624 F.3d at 1040; <u>see also</u> <u>Henderson v. Kibbe</u>,
431 U.S. 145, 154 (1977) ("The question in . . . a

collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"). Here, it is highly unlikely that the jury would have reached a different conclusion had it been instructed to determine the exact weight of methamphetamine in each Count.  Therefore, Petitioner fails to show that constitutional error was committed.

As to Petitioner's second claim that the jury instructions violated his due process rights because the Court failed to give a "simple possession" instruction, this claim was fully litigated and adversely decided against Petitioner on appeal. Fabricant, 506 F. App'x at 640.  Petitioner cannot relitigate this claim in his § 2255 Motion.  Odom, 455 F.2d at 160.

For these reasons, Petitioner's claims of error in the jury instructions fail under § 2255.

> h.  *The questioning of Meyer at trial did not* *violate Petitioner's due process rights.*

Petitioner alleges that the Court and Prosecutor improperly questioned Meyer at retrial when "the Court quickly stepped in as a third prosecutor, and took over the questioning of Meyer," and granted the Prosecutor's request to treat Meyer as a hostile witness.  However, Petitioner failed to object to the admission of Meyer's

testimony at trial[15] and failed to raise this argument
on appeal to the Ninth Circuit.  Because Petitioner
cannot show "cause" and "actual prejudice," or "actual
innocence," to excuse his procedural default, this
claim is barred on his § 2255 Motion.  <u>Bousley</u>, 523
U.S. at 622.

In any case, under Federal Rule of Evidence 611(a),
a district court has a duty to exercise reasonable
control over the examination of witnesses so as to make
the examination procedures effective for determining
the truth, avoid wasting time and protect witnesses
from harassment or undue embarrassment.  Fed. R. Evid.
611(a).  Thus, the district court has broad discretion
in supervising trials and may participate in the
examination of witnesses to clarify evidence, confine
counsel to evidentiary rulings, ensure the orderly
presentation of evidence and prevent undue repetition.
<u>United States v. Laurins</u>, 857 F.2d 529, 537 (9th Cir.
1988).  Additionally, it is well-settled law that where
a witness disclosed in her testimony that she was
adverse in interest to the party calling her, the party
might change the character of the examination from a
direct to a cross-examination.  See <u>United States v.
Budd</u>, 144 U.S. 154, 165-66 (1982); <u>see also</u> Fed. R.
Evid. 611(c).  Given Meyer's recalcitrant conduct
during the Prosecutor's examination at trial, the Court

---

[15] Petitioner admits that co-counsel did not object to
Meyer's questioning.  Pet'r's Mem. Part I  1-11.

was within its discretion to allow the Prosecutor to
treat Meyer as a hostile witness.  See Thomas v.
Cardwell, 626 F.2d 1375, 1386-87 (9th Cir. 1980)
(holding that witness's evasive, ambiguous and
conflicting statements properly supported trial court's
ruling that witness was hostile).  Thus, the actions of
the Court and the Prosecutor in questioning Meyer do
not constitute an error that is so fundamentally unfair
as to constitute a due process violation.  Id. at 1386
("Such a controversy [over whether the court properly
declared the prosecutor's witness to be hostile]
ordinarily does not give rise to the federal
constitutional question necessary for habeas corpus
relief.").  For these reasons, Petitioner's claim is
not cognizable under § 2255.

> i.   *Conclusion*

The Court finds that Petitioner's "due process"
claims raised in ground one are procedurally barred.
In any case, Petitioner fails to establish a
constitutional violation of due process to support his
§ 2255 Motion.

> 2.   Petitioner's Claim That His Sentence Is
>      Unlawful

In ground two, Petitioner claims that his sentence
is unlawful because the methamphetamine involved in his
conviction was not an "injectable liquid."  Pet'r's
Mem. Part I 2-1 to 2-2.  He asserts that non-
"injectable liquid" methamphetamine is a schedule III

29

controlled substance under 21 U.S.C. § 812, not a
schedule II controlled substance as charged.  Id.

On direct appeal, however, Petitioner did not raise
this claim.[16]  As noted above, Petitioner fails to make
a showing of "cause" and "actual prejudice," or "actual
innocence," to excuse his procedural default.
Therefore, Petitioner's claim under ground two is
procedurally barred.  Bousley, 523 U.S. at 622.

In any case, Petitioner's claim fails on the
merits.  It is well settled that methamphetamine, in
all its forms, has been classified as a Schedule II
controlled substance in accordance with 21 C.F.R. §
1308.12(d).  United States v. Durham, 941 F.2d 886, 889
(9th Cir. 1991) ("This court has repeatedly concluded,
as we have again in this opinion, that methamphetamine
has been properly designated as a Schedule II
controlled substance.").[17]  This is despite the earlier

---

[16] Although Petitioner asserted this argument in Exhibit M
before the Ninth Circuit, Petitioner did not properly raise this
claim on appeal.  See Martinez-Serrano v. I.N.S., 94 F.3d at 1259
(holding that issues are waived if merely raised in a brief but
not supported by argument).

[17] See also Gonzalez v. United States, No. CR-F-03-5165 OWW,
2009 WL 2379978, at *5-6 (E.D. Cal. July 30, 2009); Torres v.
United States, No. CR-F-03-5165 OWW, 2008 WL 2225745, at *3 (E.D.
Cal. May 28, 2008); accord United States v. Duran, 219 F. App'x
762, 764 (10th Cir. 2007); United States v. Walters, 163 F. App'x
674, 684 (10th Cir. 2006); United States v. Macedo, 406 F.3d 778,
785 (7th Cir. 2005); United States v. Alcorn, 93 F. App'x 37, 39
(6th Cir. 2004); United States v. Gori, 324 F.3d 234, 239-40 (3d
Cir. 2003); United States v. Pinkley, 24 F. App'x 287, 288-89
(6th Cir. 2001); United States v. Lane, 931 F.2d 40 (11th Cir.
1991); United States v. Roark, 924 F.2d 1426, 1428-29 (8th Cir.
1991); United States v. Kinder, 946 F.2d 362, 368 (5th Cir.
1989); United States v. Schrock, 855 F.2d 327, 331-32 (6th Cir.

language of 21 U.S.C. § 812(c) which distinguishes between injectable-liquid and non-injectable methamphetamine, and includes only the former in Schedule II.  <u>United States v. Kendall</u>, 887 F.2d 240, 241 (9th Cir. 1989) (per curiam); <u>see also</u> <u>United States v. Turner</u>, 187 F. App'x 698, 700 (9th Cir. 2006) ("We have held that the Attorney General properly rescheduled all forms of methamphetamine to Schedule II [in 21 C.F.R. § 1308.12], despite language in 21 U.S.C. § 812(c) that includes some forms of methamphetamine in Schedule III.").  Therefore, Petitioner was properly sentenced in accordance with 21 U.S.C. § 841, and his argument concerning the classification of methamphetamine under 21 U.S.C. § 812 does not warrant reversal of his sentence.

3.   <u>Petitioner's Claim of Priest-Penitent Privilege</u>

Petitioner's claim in ground three is that his "conviction was obtained by use of evidence that violated [the] common law priest-penitent privilege." Pet'r's Mem. Part I 3-1.

As an initial matter, Petitioner did not raise a violation of the priest-penitent privilege on direct appeal.[18]  As noted above, Petitioner also fails to show

_____

1988); <u>Brain v. United States</u>, No. 4:03-CR-38, 2011 WL 1343344, at *11 (E.D. Tenn. Apr. 8, 2011).

[18] As with ground two, Petitioner asserted this argument in Exhibit M before the Ninth Circuit.  However, the Court finds that Petitioner did not properly raise this claim on appeal.  <u>See</u> <u>Martinez-Serrano v. I.N.S.</u>, 94 F.3d at 1259 (holding that issues are waived if merely raised in a brief but not supported by

"cause" and "actual prejudice," or "actual innocence,"
to excuse his procedural default.  Therefore,
Petitioner's argument under ground three is barred.
Bousley, 523 U.S. at 622.

Regardless of Petitioner's procedural default,
Petitioner's claim fails because the communications
between Petitioner and Kramer are not protected by the
priest-penitent privilege.

Federal Rule of Evidence 501 provides that
privileges are "governed by the principles of the
common law as they may be interpreted by the courts of
the United States in the light of reason and
experience."  Fed. R. Evid. 501.  The Supreme Court has
long recognized a priest-penitent privilege, which has
been stated broadly as "embracing any confession by a
penitent to a minister in his capacity as such to
obtain such spiritual aid as was sought and held out in
this instance."  Mockaitis v. Harcleroad, 104 F.3d
1522, 1531 (9th Cir. 1997), overruled on other grounds
by City of Boerne v. Flores, 521 U.S. 507 (1997).  The
privilege applies to protect communications made (1) to
a clergyperson, (2) in his or her spiritual
professional capacity (3) with a reasonable expectation
of confidentiality.  In re Grand Jury Investigation,
918 F.2d 374, 384 (3d Cir. 1990).  Communications that
fail to meet the requirements of the privilege will not

argument).

1   be protected.  See United States v. Webb, 615 F.2d 828

2   (9th Cir. 1980) (holding that communications between

3   prisoner and clergyman were not confidential, and

4   therefore would not be protected).

5       Here, Petitioner failed to demonstrate that the

6   privilege applied to his communications with Kramer.

7   Petitioner's assertion that he or Kramer was an

8   ordained minister is not by itself sufficient to prove

9   that the priest-penitent privilege applied to the

10  communications at issue.  Petitioner failed to present

11  any evidence showing that he or Kramer acted in his

12  spiritual professional capacity, that the

13  communications at issue involved religious or spiritual

14  counseling or that the communications were

15  confidential.  See In re Grand Jury Investigation, 918

16  F.2d at 384.  Petitioner's argument that the priest-

17  penitent privilege has no "crime/fraud" exception is

18  similarly unconvincing.  Regardless of criminal

19  activity involving Petitioner and Kramer, Petitioner

20  did not present sufficient evidence that he or Kramer

21  sought any sort of spiritual counseling through their

22  communications.

23      Additionally, Petitioner's assertion that the Court

24  failed to grant him a hearing on the issue is

25  completely without merit.  The Court, after having

26  considered the parties' briefs, declarations and

27  affidavits filed therein, and the parties' arguments at

28  the hearing on the matter, determined that Petitioner's

argument was factually inadequate [CR 146].  Further,
Petitioner's presentation of six witnesses to testify
that Kramer (1) regularly acted as an ordained minister
and (2) repeatedly told people that "anything said to
[him was] confidential," would not have been sufficient
to demonstrate that the specific communications at
issue fell under the scope of the priest-penitent
privilege.

Therefore, because the communications between
Petitioner and Kramer were not protected under the
priest-penitent privilege, the admission of such
communications at trial cannot form the basis for a §
2255 motion.

    4.   Petitioner's Claim That The Court Improperly
        Denied His *Ex Parte* Application for DNA Testing

In ground four, Petitioner argues that his *Ex Parte*
Application for DNA Testing under 18 U.S.C. § 3600 was
wrongfully denied.[19]  Pet'r's Mem. Part I 4-1.  However,
this Court lacks jurisdiction to consider this claim
because the Court's denial of Petitioner's Application
for DNA Testing is currently pending appeal in the
Ninth Circuit, United States v. Fabricant, No. 14-
50428.  Griggs v. Provident Consumer Discount Co., 459
U.S. 56, 58 (1982) ("The filing of a notice of appeal
is an event of jurisdictional significance-it confers

_____

[19] Petitioner's alternative argument that ground four
asserts his "actual innocence" is considered in relation to
Petitioner's procedurally defaulted claims, even though the Court
finds this argument unpersuasive.

34

jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

Further, even if the Court had jurisdiction to consider this claim, "[n]othing in [18 U.S.C. § 3600] shall provide a basis for relief in any Federal habeas corpus proceeding."  18 U.S.C. § 3600(h)(2). Therefore, the statute, by its express terms, does not afford any right to habeas relief.  18 U.S.C. § 3600(h)(2); <u>see also</u> <u>D'Amario v. Banks</u>, No. CV 10-2860-MMM(CW), 2011 WL 5857488, at *4 (C.D. Cal. Sep. 29, 2011).  Moreover, there is also no freestanding federal constitutional right to post-conviction DNA testing.  <u>See</u> <u>Dist. Attorney's Office for Third Judicial Dist. v. Osborne</u>, 557 U.S. 52, 129 (2009) ("We reject the invitation [to recognize a freestanding right to DNA evidence] and conclude . . . there is no such substantive due process right.").  Accordingly, Petitioner's claim under ground four is not cognizable under § 2255.

    5.  <u>Petitioner's Brady Claims</u>

In ground five, Petitioner challenges his conviction on the ground of newly discovered evidence.[20]

_____

    [20]  After the Government framed Petitioner's argument as alleging a <u>Brady</u> violation, Petitioner adopted the Government's interpretation in his Reply.  The Court considers Petitioner's claim as though he originally alleged a <u>Brady</u> violation.  <u>See</u> <u>Castro v. United States</u>, 540 U.S. 375, 381-82 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to . . . create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal

1  Pet'r's Mem. Part I 5-1.

2         a.  *Legal Standard*

3       "Short proof of actual innocence, claims solely

4  based on new evidence are generally not cognizable on

5  habeas." <u>Berry</u>, 624 F.3d at 1038.  A claim of newly

6  discovered evidence to support a motion under § 2255

7  must be based on an independent constitutional

8  violation.  <u>Id.</u> (citing <u>Herrera v. Collins</u>, 506 U.S.

9  390, 400 ("[N]ewly discovered evidence . . . alleged in

10  a habeas application . . . *must bear upon the*

11  *constitutionality of the applicant's detention; the*

12  *existence merely of newly discovered evidence relevant*

13  *to the guilt of a state prisoner is not a ground for*

14  *relief on federal habeas corpus.*") (emphasis in

15  original).  A <u>Brady</u> violation involves a constitutional

16  violation of due process, and therefore constitutes an

17  "independent constitutional violation" that is

18  cognizable under § 2255.  <u>See</u> <u>United States v. Bagley</u>,

19  473 U.S. 667, 675-76 (1985) ("The <u>Brady</u> rule is based

20  on the requirement of due process.").

21       In <u>Brady v. Maryland</u>, the Supreme Court held that

22  "the suppression by the prosecution of evidence

23  favorable to an accused upon request violates due

24  process where the evidence is material either to guilt

25  or to punishment, irrespective of the good faith or bad

26  faith of the prosecution."  373 U.S. 83, 87 (1963).

27  ───────────────

28  basis.").

1  <u>Brady</u> violations have three components: (1) the

2  "evidence at issue must be favorable to the accused,

3  either because it is exculpatory, or because it is

4  impeaching," (2) "that evidence must have been

5  suppressed by the State, either willfully or

6  inadvertently," and (3) "prejudice must have ensued."

7  <u>Runningeagle v. Ryan</u>, 686 F.3d 758, 769 (9th Cir. 2012)

8  (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82

9  (1999)).  The terms "material" and "prejudicial" are

10 used interchangeably in <u>Brady</u> cases.  <u>Id.</u>  "Evidence is

11 'material' under <u>Brady</u> 'when there is a reasonable

12 probability that, had the evidence been disclosed, the

13 result of the proceeding would have been different.'"

14 <u>Id.</u> (quoting <u>Cone v. Bell</u>, 556 U.S. 449, 469-70

15 (2009)).  "A 'reasonable probability' of a different

16 result [exists] when the government's evidentiary

17 suppression 'undermines confidence in the outcome of

18 the trial.'"  <u>United States v. Lopez</u>, 577 F.3d 1053,

19 1059 (9th Cir. 2009) (quoting <u>Kyles v. Whitley</u>, 514

20 U.S. 419, 434 (1995)).

21          b.   *Petitioner's first argument of "newly*

22               *discovered evidence"*

23      Here, Petitioner's first <u>Brady</u> claim is that newly

24 discovered evidence shows that Agent Ciccone

25 deliberately lied during his cross-examination

26 testimony on the subject of Kramer being able to own,

27 possess and carry firearms.  Pet'r's Mem. Part I 5-1 to

28 5-2.  However, as in <u>Berry</u>, where the Ninth Circuit

1  determined that newly discovered evidence that a
2  witness committed perjury at trial did not demonstrate
3  an independent constitutional violation but merely
4  called into doubt the overall weight of the evidence
5  against the § 2255 petitioner, Petitioner's claim
6  regarding Agent Ciccone merely casts doubt on the
7  credibility of Ciccone's testimony.  Petitioner does
8  not allege that this newly discovered evidence bears
9  upon the constitutionality of his detention.  Nor does
10 the evidence prove that Petitioner is "actually
11 innocent" of the convicted crime.  See Berry, 624 F.3d
12 at 1038.  Even if the Court interprets Petitioner's
13 claim as an alleged Brady violation, Petitioner cannot
14 establish prejudice as a result of the State's willful
15 or inadvertent suppression of evidence that Agent
16 Ciccone lied.  In other words, even if the jury had
17 discounted Agent Ciccone's testimony as a result of
18 this evidence, there was ample other testimony and
19 physical evidence to support Petitioner's guilt, and
20 the suppressed evidence does not undermine confidence
21 in the outcome of the trial.  Lopez, 577 F.3d at 1059.
22 Petitioner cannot show a reasonable probability that,
23 had the evidence been disclosed, he would not have been
24 convicted.  Runningeagle, 686 F.3d at 769.

      c. *Petitioner's second argument of "newly*
         *discovered evidence"*

27     Petitioner's second claim of newly discovered
28 evidence is also without merit.  Petitioner claims that

1  there is newly discovered evidence that "unknown"
2  federal law enforcement agents "lied" to Cynthia
3  Garcia's family about Kramer's involvement in the
4  murder and "got them to agree not to sue Kramer."
5  Pet'r's Mem. Part I 5-2.  Once again, Petitioner fails
6  to establish, or even allege, a <u>Brady</u> violation.
7  Nevertheless, Petitioner's allegations amount to
8  nothing more than speculation.  He has not presented
9  any evidence of an agreement between Cynthia Garcia's
10  family and the "unknown" federal agents.  Nor has he
11  presented evidence that such an agreement existed at
12  the time Kramer testified at retrial, or that the
13  Government suppressed evidence of the agreement.
14  Moreover, even though Kramer was a key witness in the
15  Government's case, any evidence of such an agreement
16  would be cumulative of other impeachment evidence
17  against Kramer, and was therefore not prejudicial to
18  Petitioner.  Further, as mentioned above, the
19  Government presented ample evidence of Petitioner's
20  guilt aside from Kramer's testimony.  Thus, Petitioner
21  fails to show that there is a reasonable probability
22  that, had the evidence been disclosed, the result of
23  the proceeding would have ended in his acquittal.
24  <u>Runningeagle</u>, 686 F.3d at 769.
25      For these reasons, Petitioner fails to establish a
26  <u>Brady</u> violation to support his § 2255 Motion.
27  / / /
28  / / /

d. *Rule 33 Motion For New Trial*

A district court may treat a § 2255 motion as a Federal Rule of Criminal Procedure 33 motion for a new trial. <u>Berry</u>, 624 F.3d at 1039. Where petitioner's claim is not cognizable under § 2255, "[t]he proper device [for a claim of newly discovered evidence] is Federal Rule of Criminal Procedure 33, which allows a prisoner to move for a new trial based on newly discovered evidence." <u>Berry</u>, 624 F.3d at 1038 (citing Fed. R. Crim. P. 33(b)(1). Such a motion under Rule 33 must be brought within three years of the date of the guilty verdict. <u>Id.</u> Rule 33 time limits are strictly construed. <u>Herrera</u>, 506 U.S. at 409.

Here, the jury convicted Petitioner in September 2008. Petitioner did not file his § 2255 Motion until October 2014, more than six years after the date of the guilty verdict. Therefore, a Rule 33 motion for a new trial is barred as untimely.[21]

/ / /

/ / /

---

[21] In any case, to qualify for a new trial, Petitioner must establish: "(1) the evidence is newly discovered; (2) [Petitioner] was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the [Petitioner] would probably be acquitted in a new trial." <u>Berry</u>, 624 F.3d at 1042 (citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc)). Here, Petitioner's "newly discovered evidence" would merely serve to impeach the testimony of Agent Ciccone and Kramer. Additionally, the evidence does not indicate that Petitioner would probably be acquitted in a new trial. Therefore, Petitioner does not qualify for a new trial under Rule 33.

40

6.   <u>Certificate of Appealability</u>

a.   *Legal Standard*

Under 28 U.S.C. § 2253(c), a federal prisoner must seek and obtain a certificate of appealability ("COA") to appeal the district court's denial of relief under § 2255.  28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a [COA], an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255.").  A district judge may also issue a COA.  <u>See</u> Fed. R. App. P. 22(b); <u>United States v. Asrar</u>, 116 F.3d 1268, 1269-70 (9th Cir. 1997) ("[D]istrict courts possess the authority to issue [COAs] in § 2255."); Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The district court must issue or deny a [COA] when it enters a final order adverse to the applicant.").

A "[COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy the showing required by paragraph (c)(2), the petitioner must show that reasonable jurists could debate whether the petition should have been resolved differently or that the issues presented are "adequate to deserve encouragement to proceed further."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

/ / /

/ / /

b.   *Analysis*

Here, Petitioner fails to make a substantial showing of the denial of a constitutional right because his claims are either procedurally barred, are not cognizable under § 2255 or fail entirely on the merits. Petitioner's claim that several of his arguments raise novel issues of law is also without merit.  Reasonable jurists could not debate that Petitioner's § 2255 Motion should have been resolved differently or that the issues presented deserve further proceedings. Therefore, the Court **DENIES** a COA.

### III. CONCLUSION

Based on the foregoing analysis, the Court **DENIES** Petitioner's § 2255 Motion and **DENIES** a Certificate of Appealability.


**IT IS SO ORDERED.**


DATED: October 8, 2015        S/ RONALD S.W. LEW

                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge